# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ANDRE LEVESQUE,

                                      Plaintiff,

    v.                                                       8:15-CV-1314 (DNH/ATB)

USA DEP'T OF SOCIAL SECURITY,

                                      Defendant.

---

ANDRE LEVESQUE, Plaintiff pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a complaint, together with an application to proceed in forma pauperis ("IFP"), a motion for appointment of counsel, and a "Motion to Reopen Case," filed by pro se plaintiff, Andre Levesque. (Dkt. Nos. 1-4). Although it is unclear, the court has interpreted this action as plaintiff's challenge to the termination of his disability benefits and the assessment of an overpayment. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

**I.   IFP Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in

the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, because plaintiff is a "prisoner," the court must also determine whether the "three-strikes" provision of 28 U.S.C. § 1915(g) bars the plaintiff from proceeding IFP, without the prepayment of fees. Section 1915(g) provides:

> In ***no event*** shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). Additionally, under 28 U.S.C. § 1915A(b), the court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A(b) applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

3

## II. **Complaint**

In plaintiff's complaint, he alleges that he was twice placed in a perilous position by the Social Security Administration when plaintiff's benefits were "stopped," once in 2011 and once in 2014. (Complaint ("Compl.") at 1). Plaintiff alleges that the money that he was receiving from Social Security was used to maintain his property, maintain his automobile, and pay his mortgage, even though he is incarcerated. (*Id.*) Plaintiff claims that his status as a "pretrial detainee" means that he is "supposed to be treated as a regular citizen." *Id.* Plaintiff claims that the termination of benefits has caused a hardship, and that he should be allowed to continue to receive benefits. (*Id.*) Plaintiff states that he has been unable to effectively appeal the decision because he has been moved so many times from one correctional facility to another. (*Id.*) Plaintiff states that if he cannot pay the expenses on his home, he will have no where to go when he is released from incarceration. He requests that the defendant repay him "the 21,800 or the exact amount to be calculated." (Compl. at 2).

Plaintiff has attached what appears to be a part of the notice that he received from the Social Security Administration, dated Setpember 3, 2014. (Compl. at 3). The notice states that plaintiff should have stopped receiving benefits beginning in June of 2014 because he was "imprisoned for conviction of a crime." (Compl. at 3). The notice further informed plaintiff that because Social Security did not actually stop his payments until September of 2014, he was overpaid $3,341.80. (*Id.*) The complaint

4

also contains various documents, written by plaintiff on various dates in 2015. (Compl. at 4-28). These documents contain extensive background information regarding plaintiff and his troubles, both financial and legal. Plaintiff complains about the length of his pretrial incarceration, the Middle East, the Affordable Care Act, the lack of stability, the cost of medication at his correctional facility in Vermont, the Social Security Administration in general, his medical condition in general, his previous lawsuits, and about how many times he was transferred between May of 2014 to June of 2015. (*See e.g.* Compl. at 6, 11, 13, 15, 21).

## III. "Three Strikes"

### A. Determination of Three Strikes

On July 12, 2012, the Honorable Norman A. Mordue determined that plaintiff had acquired "at least" three strikes, prior to May 5, 2012,[1] based upon plaintiff's litigation history, listed on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *Levesque v. United States Government*, No. 9:12-CV-796 (NAM/DEP) (Dkt. No. 8 at 4-7). Judge Mordue noted that *Levesque v. State of South Carolina*, No. 1:10-CV-0049, Order (D.N.H. filed June 14, 2010); *Levesque v. NH*

---

[1] May 5, 2012 was the date that Judge Mordue found that plaintiff "brought" his action. A court performing the "three-strikes" analysis must determine the date upon which plaintiff "brought" the action for purposes of 28 U.S.C. § 1915(g). The plaintiff must have accumulated his three strikes prior to the date that he brought his federal action. Under the prison "mailbox" rule, the date of filing is the date on which the plaintiff delivered his complaint to a prison guard for mailing to the court, which is generally presumed to be the date that the complaint is signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

5

*Supreme Court Office of Attorney Discipline*, No. 1:10-CV-0040, Order (D.N.H. filed June 14, 2010); and *Levesque v. Ellenberg, NY, Town of*, No. 1:09-CV-0430, Order (D.N.H. filed June 14, 2010) were all dismissed for being frivolous or for failure to state a claim. *Levesque v. United States Government*, No. 9:12-CV-796 (NAM/DEP) (Dkt. No. 8 at 4-5). In the New Hampshire cases, cited in Judge Mordue's order, Judge LaPlante was adopting Report and Recommendations by Magistrate Judge Muirhead, which addressed fourteen separate actions that this plaintiff filed while he was incarcerated in New Hampshire. (*Id.* at 5, n.5). The identical Report-Recommendation was filed in each of the fourteen actions. (*Id.*)

Although the court could simply take judicial notice of Judge Mordue's ruling, I would point out that since Judge Mordue's decision in *Levesque v. United States Government*, plaintiff has brought several more cases in the Northern District of New York, most of which have been dismissed as frivolous or for failure to state a claim.[2] *See Levesque v. North Country Economic Dev. Council*, No. 8:13-CV-248 (DNH/CFH) (dismissed 5/8/2013 for failure to submit proper IFP application); *Levesque v. Dominy*, No. 8:14-CV-298 (GLS/CFH) (dismissed amended complaint for failure to state a claim, without leave to amend on 4/28/15); *Levesque v. State Farm Ins. Co.*, No. 8:13-CV-346 (LEK/RFT) (dismissed 5/21/13 denying IFP pursuant to § 1915(g) and

---

[2] Only the cases that were dismissed as frivolous or for failure to state a claim prior to the plaintiff filing this action would count as additional strikes, but the court has listed all plaintiff's additional cases.

6

dismissing for failure to state a claim – in accordance with recommendation of M.J. Treece dated 4/24/13) (dismissed upon defendants' motion for failure to state a claim – 9/8/14); *Levesque v. State of NY*, No. 8:13-CV-825 (TJM/RFT); *Levesque v. John & Jane Does*, No. 8:14-CV-506 (TJM/CFH) (denying IFP based on prior frivolous filings on 8/5/15); *Levesque v. Does*, No. 9:14-CV-919 (GLS/CFH) (case transferred to D. Vt. which later denied IFP based on three-strikes), 2014 WL 4649956 (D. Vt. Sept. 16, 2014) and 2015 WL 4090666 (D. Vt. July 7, 2015) (dismissing without prejudice for failure to pay the filing fee); *Levesque v. Peebles*, No. 5:15-CV-914 (FJS/TWD) (M.J. Dancks recommended that IFP be denied pursuant to § 1915(g), but that the case be dismissed with prejudice pursuant to § 1915A(b)), accepted in its entirety on November 3, 2015). Plaintiff has more than enough strikes to invoke section 1915(g).

Thus, unless plaintiff can meet the imminent danger exception to section 1915(g), plaintiff may not proceed with this action IFP.

### B. The Imminent Danger Exception

Congress enacted the imminent danger exception contained in section 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding IFP. *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002). In order for an inmate to qualify for this exception, the danger must be present when he files the complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v.*

*Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted).

In addition, section 1915(g) allows a three-strikes litigant to proceed IFP only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Id.* at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleged is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99. The court looks to the non-conclusory allegations in the complaint. *Welch v. Charlan*, No. 9:06-CV-0061 (GTS/DEP), 2008 WL 5382353, at *1, n.2 (N.D.N.Y. Dec. 16, 2008). In addition, even though a court must draw the most favorable inferences that a pro se complaint supports, the court cannot invent allegations that plaintiff has not pled. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

In this case, plaintiff seeks reimbursement of his disability benefits. Plaintiff complaint about the cost of ibuprofen, possible issues with paying his bills while he is incarcerated, and other forms of economic injury. However, plaintiff has not alleged that he was in imminent danger of physical injury at the time he filed this complaint. Thus, the three-strikes rule would prevent plaintiff from proceeding with this action unless and until he pays the filing fee. Normally, in such a situation, the court would stop at this point in the analysis and afford plaintiff the chance to pay the filing fee, but

8

because of type of action that plaintiff is attempting to bring, and the deficiencies in the complaint as it stands, the court will continue its analysis.

IV. **Social Security Appeals Jurisdiction**

    A. **Legal Standards**

The United States is immune from suit except to the extent that it specifically consents to be sued. *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (quoting *United States v. Mitchell*, 445 U.S.535, 538 (1980)). This sovereign immunity shields the United States as well as its agencies and officers acting in their official capacities. *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). A waiver of sovereign immunity cannot be implied, and must be "unequivocally expressed." *Id.* (citing *United States v. King*, 395 U.S. 1, 4 (1969)).

It is well-settled that the district court may not review an adverse decision of the Commissioner regarding the plaintiff's entitlement to social security benefits except as expressly authorized by the Social Security Act, 42 U.S.C. § 1383(c)(3) (incorporating section 405(g)). *Id.* Section 405(g) of the Social Security Act requires that plaintiff exhaust his administrative remedies, and that an appeal to federal court must be from a "final decision" of the Commissioner. 42 U.S.C. § 405(g). *See Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). *See Norman v. Astrue*, 912 F. Supp. 2d 33, 40 (S.D.N.Y. 2012) (citing *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) ("the [Commissioner's] 'final decision' is a prerequisite to subject matter jurisdiction in the district court and

consists of two components, a presentment requirement and an exhaustion requirement."). The statute also provides that there shall be no review other than that provided in section 405(g). 42 U.S.C. § 405(h).

Notwithstanding the exhaustion requirement, there are certain circumstances in which the requirement may be waived either by the Commissioner or by the court. *Steadman v. Colvin*, No. 14-CV-7495, 2015 WL 4393022, at *5 (S.D.N.Y. July 14, 2015) (citing *Maloney v. Social Security Administration*, No. 02-CV-1725, 2006 WL 1720399, at *5 (E.D.N.Y. 2006)). Waiver of the exhaustion requirement may occur when: "(1) the claim is collateral to a demand for benefits; (2) the exhaustion of remedies would have been futile; and (3) a plaintiff would suffer irreparable harm if required to exhaust administrative remedies." *Id.* No one element is determinative of the resolution of the waiver issue, rather, the court must balance the competing considerations to arrive at a just result. *Id.* (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (citing *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990)).

If the plaintiff has a constitutional claim, relating to an agency decision, the federal court will have subject matter jurisdiction over the claim regardless of the plaintiff's failure to exhaust. *Id.* Constitutional questions are not suited to resolution in the administrative procedure, and thus, access to the court "'is essential to the decision of such questions.'" *Id.* (citing inter alia *Califano v. Sanders*, 430 U.S. 99, 109 (1977)). Thus, the court may exercise jurisdiction, even if plaintiff failed to exhaust, if he brings

10

a "colorable constitutional claim."

   B.   **Application**

As stated above, the court assumes that plaintiff is attempting to bring an action to challenge the Commissioner's termination of his social security benefits and the assessment of an overpayment.[3] Even if plaintiff were to pay the filing fee in this action, he would be faced with a jurisdictional problem. It is clear that plaintiff has not exhausted his administrative remedies, and he has conceded as such in his complaint. His current notice of termination is dated September 3, 2014, and plaintiff acknowledges receiving that notice, part of which is attached to his complaint. (Compl. at 3). Plaintiff states that he was transferred frequently, and this "denied [him] a fair appeal process." He also states that he was "denied participation in a governmental program to attempt to appeal the letter and economic sanction of my SS benefits . . . ." (Compl. at 6).

Normally, a claim that an individual was not able to appeal or had mental problems and could not appeal would be valid consideration. However, in this case, the court first notes that plaintiff did not attach the entire notice from Social Security to his complaint. The notice states that it came with "enclosures," and one of the enclosures was "SSA-3105." (Compl. at 3). Form SSA-3105 contains a section entitled

---

[3] Plaintiff states that his benefits were terminated in 2011 and in 2014. The court will focus first on the 2014 action by the Social Security Administration because plaintiff has attached part of the relevant documents to this complaint. The court will discuss the 2011 termination below.

11

"IMPORTANT INFORMATION ABOUT YOUR APPEAL, WAIVER RIGHTS, AND REPAYMENT OPTIONS." SSA-3105, www.socialsecurity.gov/forms/ssa-3105.pdf. The form also contains a subsection entitled: "HOW TO REQUEST WAIVER OR RECONSIDERATION." *Id.* On the next page, there is a detailed explanation of both reconsideration and waiver,[4] and the form details the time limits for each. The form also states that if one does not appeal within the "60 day time limit," and "you have a good reason (such as hospitalization) for not appealing within the time limits, we may give you more time." *Id.* at 2. In fact, the form also contains a "tear off form" attached to the last page, together with an enclosed envelope, just in case the plaintiff could not obtain proper forms from the Social Security Administration.

Thus, it is clear that when plaintiff received his 2014 notice from the Social Security Administration, he had the "opportunity" to file an appeal of the decision and request a waiver of the recovery. Plaintiff complains bitterly about all of his transfers and how he was unable to "appeal." However, his frequent transfers were not the fault of the Social Security Administration, and had nothing to do with the fairness of the "appeal process." In any event, the court notes that plaintiff managed to file documents

---

[4] An individual may request "waiver." Waiver means that recovery of the overpayment may be "waived" if the overpayment was not the plaintiff's fault, and repaying it would mean that the individual would not be able to pay necessary living expenses or the overpayment was not the plaintiff's fault, and "repaying it would be unfair to you." (SSA-3105 at 2). This is exactly what plaintiff is trying to argue to the court in this action, in addition to his argument that the Social Security Administration was incorrect in stopping his benefits for a "conviction," when plaintiff is incarcerated as a pre-trial detainee.

12

in many of his then-pending cases. On October 15, 2014, he wrote a letter to the court, changing his address to the Metropolitan Detention Center in 8:13-CV-825 (Dkt. No. 74), in 8:14-CV-298 (Dkt. No. 13), in 8:14-CV-506 (Dkt. No. 16), and in 9:12-CV-960 (Dkt. No. 138). He wrote a letter to the district judges in all three of the above cases, dated November 1, 2014 (filed November 10, 2014), requesting appointment of counsel. (Dkt. Nos. 76, 14, 17, and 139 respectively). On September 10, 2014, plaintiff filed a letter, postmarked September 8, 2014, in support of his amended complaint in 9:12-CV-960 (Dkt. No. 136). He managed to file a substantial number of court documents, notwithstanding all of his transfers.[5]

In addition, the court notes that plaintiff has attempted to bring a similar challenge to this court in a previous action (which complained about Social Security's 2011 action withholding his payments). *See Levesque v. John & Jane Does*,[6] No. 14-CV-506 (Dkt. No. 1). Plaintiff attempted to bring the action pursuant to 42 U.S.C. § 1983, which provides a cause of action for suits against individuals acting under

---

[5] A review of the plaintiff's cases in the District of Vermont also shows that plaintiff was filing a variety of documents during the time that he states that he could not appeal the Social Security determination due to his extensive transfers. On October 2, 2014, plaintiff filed a letter to Magistrate Judge John Conroy, complaining about his treatment at various facilities and requesting that the Magistrate Judge do a variety of things, including "force the accommodation of [plaintiff's] condition" at the facilities to which he would be transferred. *Levesque v. Does*, 1:14-CV-188 (Dkt. No. 11) (case that was transferred from NDNY). In this letter, plaintiff also requested that the court dismiss his pending criminal case. *Id.* He filed additional documents on October 9, 2014; October 27, 2014; and November 10, 2014. (Dkt. Nos. 11-14).

[6] The John or Jane Does were apparently from the Department of Homeland Security and Social Security.

13

"color of state law." In addition to denying IFP on August 4, 2014 because plaintiff brought too many frivolous cases,[7] the court noted that a challenge to a denial or modification of Social Security payments "is possible through 42 U.S.C. § 405(g)."[8] (Dkt. No. 8 at 3). Thus, plaintiff knew in August of 2014, the month before he got the current notice from the Social Security Administration, that the appropriate channel for an appeal of the determination of a Social Security decision was through section 405(g). In fact, plaintiff may still have the opportunity to appeal if he requests more time from Social Security. Form 3105 states that "[a] request for more time must be made to us in writing, stating the reason for the delay." (SSA-3105).

In his complaint, plaintiff states that the "process" of appeal is unfair, and that his *transfers* have denied him "participation" in the Social Security Appeals process. (Compl. at 7). A liberal reading of plaintiff's complaint could indicate that plaintiff is attempting to allege a due process violation with respect to the "process" by which he can appeal the decision of the Social Security Administration. If plaintiff presented a

---

[7] Magistrate Judge Hummel did not rely on 28 U.S.C. § 1915(g) in denying plaintiff IFP. Magistrate Judge Hummel cited the court's inherent and constitutional authority to protect its jurisdiction from conduct which impairs the ability to carry out Article III functions. (Dkt. No. 8 in 8:14-CV-506 at 2 (citing *Sash v. United States*, No. 09-CV-450 (DC), 2009 WL 3007379, at *7 (S.D.N.Y. Sept. 22, 2009) (citing inter alia *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)). Plaintiff appealed the Magistrate Judge's order. (Dkt. No. 19). On August 5, 2015, Judge McAvoy denied plaintiff's appeal, and ordered plaintiff to pay the filing fee. (Dkt. No. 21). Plaintiff failed to do so, and on October 5, 2015, the court issued a second order for plaintiff to pay the fee. Plaintiff has failed to do so, and the court is now considering dismissal for failure to pay the fee. (Dkt. No. 24 "Court Motion" to dismiss).

[8] Plaintiff appealed, and Judge Sharpe affirmed Magistrate Judge Hummel's recommendation. (Dkt. No. 21 in 8:14-CV-506).

14

"colorable Constitutional claim," he would be entitled to bypass the exhaustion requirement. Plaintiff has not presented even a colorable Constitutional claim. His conclusory statement that because he has been transferred, he was denied the opportunity to appeal is contrary to what his filing history shows, and as stated above, the notice that plaintiff received contained all the information necessary for an appeal to the agency. Plaintiff has only stated that the appeal process was unfair, but he does not allege how it was unfair. In fact, plaintiff appears to be complaining about the effect of his many transfers on his ability to appeal. This would not be a challenge to the appeal process itself. The Social Security Administration has no power over plaintiff's transfers.

In this case, because plaintiff has three-strikes, this court must recommend denying IFP based on the three-strikes. In addition, rather than affording plaintiff time to pay the fee, the court will recommend dismissing the action without prejudice for failure to exhaust administrative remedies with respect to the challenge to the termination of benefits and overpayment assessment by Social Security. The court is not recommending dismissal on the merits.[9]

---

[9] The court notes that plaintiff argues that the Social Security Administration was incorrect in listing the reason for termination of benefits as "imprisoned for conviction of a crime." Plaintiff argues, and it appears that he is correct in this argument, that at the time of the termination, he was being held as a pretrial detainee for stalking charges in Vermont. It does appear that plaintiff had been incarcerated elsewhere, and may have had convictions for other crimes, but this court cannot tell from the documents before it. Thus, the court makes no finding on the merits of this action, only that even if plaintiff pays the filing fee, the court would not be able to adjudicate his issues under the Social Security Act until he exhausted his administrative remedies.

15

## V. Appointment of Counsel

### A. Legal Standards

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

### B. Application

Even assuming that plaintiff were eligible for appointment of counsel, this court

would deny such appointment at this time. Plaintiff is barred by section 1915(g) from proceeding with the action until he pays the filing fee, and as stated, the complaint may be subject to dismissal for lack of jurisdiction even if plaintiff paid the fee. Thus, at this time, appointment of counsel is not warranted.

The court notes that plaintiff was appointed counsel in the District of Vermont in *Levesque v. John & Jane Does*, No. 1:14-CV-188. Counsel was appointed because plaintiff was found incompetent to stand trial in his criminal case in Vermont, and the law is clear that a court may not dismiss a civil claim on the merits if the claim is brought by an incompetent person who is not properly represented. (Dkt. No. 15 in 1:14-CV-188 at 3) (citing *Berrios v. N.Y. City Hous. Auth*, 564 F.3d 130, 135 (2d Cir. 2009)). Subsequently, through counsel in Vermont, the plaintiff stated that he was unable to pay the filing fee, but he was not able to make a claim that he was in imminent danger of serious bodily injury. Thus, the plaintiff did not object to the Magistrate Judge's recommendation of dismissal of the action without prejudice. (Dkt. Nos. 24 (Rep.-Rec.), 27 (counsel's response) in 1:14-CV-188). A review of the docket sheet in plaintiff's criminal action in Vermont, *United States v. Levesque*, 2:14-MJ-46 (JMC) shows that on June 1, 2015, plaintiff was found competent to stand trial. (Dkt. No. 33 in 2:14-MJ-46). Plaintiff subsequently pled guilty. However, the Honorable William K. Sessions has recently determined that a further mental evaluation is necessary prior to sentencing. (Dkt. No. 41 in 2:14-MJ-46). At this time, it appears that

17

plaintiff is not incompetent, and in any event, the court is not recommending dismissal on the merits.

## VI. **"Motion to Reopen"**

Plaintiff has filed a document that is entitled "Motion to Reopen." (Dkt. No. 4). However, the caption lists the District of Vermont, and there is no civil action number written on the document. He filed this document together with the complaint in this action, and he states that the name of the case is *Levesque v. Dept. of Social Security*. (*Id.*) It is unclear what case he is attempting to reopen because this complaint is an entirely new action. If plaintiff is attempting to reopen his previous case in this district in which he named the Social Security Administration, he does not need to reopen the case because it is not closed. On October 5, 2015, plaintiff was ordered to pay the filing fee by November 6, 2015 or the case would be sent back to Judge McAvoy for further proceedings. (Dkt. No. 23 in 8:14-CV-506). As stated above, on November 13, 2015, the court indicated that it is now considering sua sponte dismissal for failure to pay the fee, but no final order has been issued dismissing the action. If plaintiff is asking to reopen a case in another district, he may not do so here. He must go to the district in which the case was pending before it was closed. Thus, plaintiff's motion to reopen must be denied.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **DENIED**

pursuant to 28 U.S.C. § 1915(g), and it is

**RECOMMENDED**, that the action be **DISMISSED WITHOUT PREJUDICE** based upon 28 U.S.C. § 1915(e)(2)(B)(ii) for lack of jurisdiction and failure to state a claim, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**, and it is

**ORDERED**, that plaintiff's "motion to reopen and appoint attorney" (Dkt. No. 4) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff**.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 17, 2015

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge